**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TRUESIGHT COMMUNICATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>HISENSE CO., LTD., HISENSE VISUAL TECHNOLOGY CO., LTD., HISENSE USA CORPORATION, HISENSE ELECTRONICS MANUFACTURING COMPANY OF AMERICA CORPORATION, and HISENSE MONTERREY HOME APPLIANCE MANUFACTURING, S. DE R.L. DE C.V.,<br><br>Defendants. | ) | Case No. 2:26-cv-00<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Truesight Communications LLC ("Truesight" or "Plaintiff") for its Complaint against Defendants Hisense Co., Ltd. ("Hisense Co."), Hisense Visual Technology Co., Ltd. ("Hisense Visual"), Hisense USA Corporation ("Hisense USA"), Hisense Electronics Manufacturing Company of America Corporation ("Hisense Electronics"), and Hisense Monterrey Home Appliance Manufacturing, S. de R.L. de C.V. ("Hisense Monterrey") (collectively, "Hisense" or "Defendants") for patent infringement alleges as follows:

## THE PARTIES

1. Truesight is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 209 East Austin Street, Marshall, TX 75670.

2. On information and belief, Defendant Hisense Co. is a is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Hisense Tower, No. 17, Donghai Xi Road, Shinan, Qingdao, Shandong Province 266071, People's Republic of China, and may be served pursuant to the provisions of the Hague Convention. Hisense Co. is a leading manufacturer and seller of displays and televisions in the world and in the United States.[1] On information and belief, Hisense Co. does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas. This action arises out of that business.

3. On information and belief, Hisense Visual is a corporation duly organized and existing under the laws of the People's Republic of China, with its principal place of business at 218 Qianwangang Road, Qingdao Economic & Technological Development Zone, Qingdao, Shandong Province, 266555, People's Republic of China, and may be served pursuant to the provisions of the Hague Convention. Hisense Visual is a leading manufacturer and seller of displays and televisions in the world and in the United States.[2] On information and belief, Hisense Visual does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas. This action arises out of that business.

---

[1] *See* Hisense, *Explore Televisions*, https://www.hisense-usa.com/televisions (last visited August 3, 2026); Evelyn Cheng, *China's Hisense aims to become the No. 1 TV company in the U.S. within 2 years, top executive says*, Consumer News and Bus. Channel (Nov. 4, 2024, at 23:06 EST), https://www.cnbc.com/2024/11/05/chinas-hisense-aims-to-become-the-no-1-tv-company-in-the-us-within-2-years.html.

[2] *See id.*

4. On information and belief, Hisense USA is a corporation organized and existing under the laws of Georgia, with a principal place of business at 7310 McGinnis Ferry Road, Suwanee, Georgia 30024. On further information and belief, Hisense USA has a registered agent Yuyang Ren at 5995 Windward Parkway Suite 500-A, Alpharetta, GA, 30005. On information and belief, Hisense USA does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas. This action arises out of that business.

5. On information and belief, Hisense Electronics is a corporation organized an existing under the laws of Georgia, with a principal place of business at 7310 McGinnis Ferry Road, Suwanee, Georgia 30024. On further information and belief, Hisense Electronics has a registered agent Yuyang Ren at 5995 Windward Parkway Suite 500-A, Alpharetta, GA, 30005. On information and belief, Hisense Electronics does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas. This action arises out of that business.

6. On information and belief, Hisense Monterrey Home is a corporation organized and exiting under the laws of Mexico, with its principal place of business at Av. Puerta Grande No. 1301, Hofusan Industrial Park, Salinas Victoria, Nuevo Leon, 65330 México, and may be served pursuant to the provisions of the Hague Convention. On information and belief, Hisense Monterrey does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in

Texas, including in the Judicial District of the Eastern District of Texas. This action arises out of that business.

7. On information and belief, Hisense uses, offers for sale, and sells the infringing products accused herein to customers and potential customers in Texas, including in this judicial district. Hisense maintains a place of business in this district at 701 Spinks Road, Suite 100, Lewisville, Texas 75067.




**List**

| | | | |
|---|---|---|---|
| **Global Fulfillment Center-Chicago**<br>1200 Greenbriar Dr<br>Addison, IL 60101 | **Global Fulfillment Center-Phoenix**<br>5301 Cotton Ln<br>Litchfield Park, AZ 85340 | **Global Fulfillment Center-Atlanta**<br>775 Tipton Industrial Dr<br>Suite F<br>Lawrenceville, GA 30046 | **Regional Fulfillment Center-Dallas**<br>701 Spinks RD<br>Suite 100<br>Lewisville, TX 75067 |
| **Regional Fulfillment Center-Fort Lauderdale**<br>3410 Davie Rd<br>Suite 403<br>Davie, FL 33314 | **Regional Fulfillment Center-Albany**<br>24 Roberts Ln<br>Clifton Park, NY 12065 | **Regional Fulfillment Center-Cincinnati**<br>8720 Le Saint Dr<br>Building D<br>West Chester, OH 45011 | **Regional Fulfillment Center-Evansville**<br>900 E Diamond Ave<br>Evansville, IN 47711<br>Phone: (812) 423-8867 |
| **Regional Fulfillment Center-Toronto**<br>3800A Laird Rd<br>Mississauga, ON L5L 0B2 | | | |

[3]



Multiple Dates
Thu, Aug 14
Hisense Free-standing Gas Range / Lewisville, TX
Details

Multiple Dates
Wed, Aug 13
R-600a Sealed Systems Training / Lewisville, TX
Details

[4]

[3] https://hisense.encompass.com/general/Locations.
[4] https://www.hisense-usa.com/event-list.



[5]

8. Further, Hisense's authorized sellers and sales representatives use, offer, sell, and distribute products accused of infringing Plaintiff's patents to consumers in this judicial district. Hisense's authorized sellers and sales representatives include Best Buy located at 422 W Loop 281, Ste 100, Longview, Texas 75605 and at 5514 S Broadway Ave, Tyler, Texas 75703.

## JURISDICTION AND VENUE

9. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. This Court has specific and personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long

[5] https://www.hisense-usa.com/event-details/hisense-free-standing-gas-range-2025-08-14-12-00.

Arm Statute. On information and belief, Defendants have sufficient minimum contacts with the forum because Defendants transact substantial business in the State of Texas and in this Judicial District. Further, Defendants have, directly or through subsidiaries or intermediaries, committed and continue to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

11. Moreover, Defendants have placed, and are continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from their infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, dealer agents, , retailers, and/or end users, and/or consumers.

12. In addition, Defendants have knowingly induced and continue to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices including infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

13. Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would otherwise occur to Truesight.

14. In addition, or in the alternative, this Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, Defendants Hisense Co., Hisense Visual, and Hisense Monterrey are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendants is consistent with the United States Constitution.

15. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendants are subject to personal jurisdiction in this Judicial District, have committed acts of patent infringement in this Judicial District, and have regular and established places of business in this Judicial District. Defendants, through their own acts and/or through the acts of others, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly do and solicit business in this Judicial District, and have the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one. Venue is further proper with respect to at least Defendants Hisense Co., Hisense Visual, and Hisense Monterrey because they are not residents of the United States, and 28 U.S.C. § 1391(c)(3) provides that "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." Further, on information and belief, Defendants have admitted or not contested proper venue in this Judicial District in other patent infringement actions.

**PATENTS-IN-SUIT**

16. On February 3, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,949,879 (the "'879 Patent") entitled "Access Controls for Known Content." A true and correct copy of the '879 Patent is available at: https://patentimages.storage.googleapis.com/cf/7c/9f/1a370fc15f9104/US8949879.pdf.

17. On November 25, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,898,803 (the "'803 Patent") entitled "Content and Identity Delivery System for Portable Playback of Content and Streaming Service Integration". A true and correct copy of the '803 Patent is available at: https://patentimages.storage.googleapis.com/f4/3a/65/e122d49133de59/US8898803.pdf.

18. On March 14, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,595,300 (the "'300 Patent") entitled "Contextual Chapter Navigation." A true and correct copy of the '300 Patent is available at: https://patentimages.storage.googleapis.com/b2/e4/a7/76a598cb2aed44/US9595300.pdf.

19. On June 3, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,745,749 (the "'749 Patent") entitled "Virtual Secure Digital Card." A true and correct copy of the '749 Patent is available at: https://patentimages.storage.googleapis.com/64/49/99/11947952f342e0/US8745749.pdf.

20. Truesight is the sole and exclusive owner of all right, title, and interest in the'879 Patent, the '803 Patent, the '300 Patent, and the '749 Patent, (collectively, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Truesight also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive

relief as appropriate under the law.

## FACTUAL ALLEGATIONS

21. The Patents-in-Suit generally relate to methods and apparatuses related to storage and display of digital media.

22. The ’879 Patent relates to technology involving personalized access controls associated with digital media in a digital library by creating policy decisions regarding use of the asset based on these settings. The access controls can be implemented on an individual or on a group basis. The technology described in the ’879 Patent was developed by Joseph Zipperer, Steven King, and Valiant Seu. For example, the technology is implemented in infringing Hisense smart televisions, including, but not limited to, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) (Model No. 55U7SG), using software and/or applications, such as Google Family Link, to put content restrictions on certain media, such as television shows and movies.

23. The ’803 Patent relates to technology for downloading streamed digital media from a device to a media storage system for when the device is not connected to a network. The technology described in the ’803 Patent was developed by David W. Hostetter and Joseph P. Zipperer. For example, the technology is implemented in Hisense smart televisions, including, but not limited to, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), when videos are downloaded to the device’s virtual and/or flash memory, such as an SD card or equivalent internal storage.

24. The ’300 Patent relates to technology for systems and methods for chapter navigation of video playbacks along a timeline of the video. The technology described in the ’300 Patent was developed by Todd E. Duffin, Todd R. Malsbary, and Mark E. Phillips. For example,

the technology is implemented in Hisense smart televisions, including, but not limited to, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), which stream videos that allow for chapter navigation and selection within the video.

25. The ’749 Patent relates to technology for systems and methods for generating virtual memory. The technology was developed by Joseph P. Zipperer and John Calixto. For example, the technology is implemented in Hisense smart televisions through memory modules, including, but not limited to, eMMC and/or UFS memory modules.

26. Hisense has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, to smart televisions.

## COUNT I
## (Infringement of the ’879 Patent)

27. Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

28. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’879 Patent.

29. Defendants have and continue to directly infringe the ’879 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’879 Patent. Such infringing products include Hisense smart televisions, including, but not limited to, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), among other Hisense products.

30. For example, Defendants have and continue to directly infringe at least cClaim 4 of the ’879 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include Hisense smart televisions, including, but not limited to, the Hisense – 55”

Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), among other Hisense Products, through the implementation of content restrictions, such as those through Google Family Link and other parental controls. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) is exemplary of how the Accused Products infringe the ’879 Patent.

31. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the use of Google Family Link, performs a method in a computing system for creating specific rating policies for digital media access, the method comprising: under control of the computing system having a memory and a processor. For example, the Google Family Link allows users to set ratings (e.g., Teen, PG-13, PG-14) for known digital content (e.g., Apps, Games, Movies, TV) to be played back on a video playback device having a V-chip or the equivalent thereof.

32. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the use of Google Family Link, performs a step of retrieving media information from the memory comprising a rating based media access policy for a digital content; displaying the rating based media access policy to a user. For example, the Google Family Link comprises a rating policy management module (e.g., Content Restrictions) for selectively setting rating based access control on a per media (e.g., Apps, Games, Movies, TV, books) and per user basis for digital content of a digital library (e.g., Google Play library) thereby displaying the rating based media access policy to a user (e.g., a parent).

33. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the use of Google Family Link, performs a step of receiving from the user a first rating based access control policy override action for a first viewer and a second, different, rating based access control policy override action for a second viewer with respect to a same

specific digital content. For example, Google Family Link performs the step of receiving from the user (e.g., a parent) a first rating based access control policy (e.g., PG-13 Movies for a 14-year-old) override action for a first viewer and a second, different, rating based access control policy override (e.g., G Movies for a 7-year-old) action for a second viewer with respect to a same specific digital content (e.g., a PG-13 rated movie).

34. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the use of Google Family Link, performs a step wherein the first viewer and second viewer are separate and distinct from the user from which the override actions are received, and wherein the first viewer is associated with a first authentication code unique to the first viewer and the second viewer is associated with a second authentication code unique to the second viewer. For example, a first user (e.g., a 14-year-old) and a second user (e.g., a 7-year-old) are separate and distinct from the user (e.g., a parent) from which the override actions are received, and wherein the first viewer is associated with a first authentication code unique to the first viewer (e.g. the 14-year-old's login) and the second viewer is associated with a second authentication code unique to the second viewer (e.g., the 7-year-old's login);

35. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the use of applications such as Google Family Link, performs a step of storing the first and second policy override actions in a rating policy repository wherein future playback of the digital content is allowed or blocked consistent with the stored policy override action. For example, Google Family Link stores the first policy override action (e.g., access to PG-13 movies for a 14-year-old) and second policy override actions (e.g., no access to PG-13 movies for a 7-year-old) in a rating policy repository wherein future playback of the digital content (e.g., a PG-13 rated movie) is allowed or blocked consistent with the stored policy override action.

36. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the use of applications such as Google Family Link, performs a step wherein the first viewer is allowed to access the specific digital content based upon the first authentication code and the second viewer is blocked from access to the specific digital content based upon the second authentication code, wherein the first authentication code comprises a personal identification number (PIN). For example, the first user (e.g., a 14-year-old) is required to use their Google login to see available content (e.g., a PG-13 movie), while the second viewer (e.g., a 7-year-old) is blocked from accessing the specific digital content based upon the authentication code (e.g., the 7-year-old's login), wherein the first authentication code comprises a personal identification number (PIN).

37. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the use of applications such as Google Family Link, performs a step wherein the first of the two users is allowed to access the specific digital content in response to determining that a content identifier of the specific digital content matches a user identifier of the first user and the personal identification number of the first user is successfully authenticated. For example, the first of the two users (e.g., a 14-year-old) is allowed to access the specific digital content (e.g., a PG-13 movie) in response to determining that a content identifier of the specific digital content identifier (e.g., Family Link inclusion of a PG-13 or lower movie) matches a user identifier of the first user (e.g., a 14-year-old's username) and the personal identification number of the first user is successfully authenticated (e.g., a 14-year-old's successful login with password).

38. On information and belief, Defendants' direct infringement of the '879 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote

the sale of the Accused Products.

39. Defendants have and continue to indirectly infringe one or more claims of the ’879 Patent by knowingly and intentionally inducing others, including Hisense’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

40. Defendants, with knowledge that these products, or the use thereof, infringe the ’879 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’879 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants’ specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the ’879 Patent at least as early as the issuance of the ’879 Patent.

41. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’879 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants’ website, product literature and packaging, and other publications. For example, Hisense makes available to their customers and end-users various materials that instruct

them on how to use Hisense products in an infringing manner based on the product, such as user manuals, both on their website and included with the physical products when purchased.



[6]

42. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '879 Patent. Defendants perform these affirmative acts with knowledge of the '879 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '879 Patent.

43. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '879 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '879 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '879 Patent, have no substantial non-infringing uses,

---

[6] https://www.hisense-usa.com/support.

and are known by Defendants to be especially made or adapted for use in the infringement of the ’879 Patent. Defendants perform these affirmative acts with knowledge of the ’879 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’879 Patent.

44. Truesight has suffered damages as a result of Defendants’ direct and indirect infringement of the ’879 Patent in an amount to be proven at trial.

45. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’879 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the ’803 Patent)**

46. Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

47. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’803 Patent.

48. Defendants have and continue to directly infringe the ’803 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’803 Patent. Such products include smart televisions, such as the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) preloaded with streaming applications, such as the Netflix Television Application[7], among other Hisense products.

49. For example, Defendants have and continue to directly infringe at least Claim 1 of

[7] One information and belief, the Accused Products, including the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), come preloaded with the Netflix, either in its entirety or as a stub. *See* https://tv.google/intl/en_in/. On further information and belief, Hisense promotes the sale of the Accused Products with the use of various streaming services.

the ’803 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smart televisions, such as the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) preloaded with the Netflix Television Application, among other Hisense products. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) is exemplary of how the Accused Products infringe the ’803 Patent.

50. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), integrated with the Netflix Television Application, performs a method of delivering content by integrating a kiosk delivery system with a streaming service (e.g., Netflix). The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), integrated with the Netflix Television Application, performs a step of transferring content from a kiosk to a flash memory media device, wherein the flash memory media device is configured to be connected to a playback device. For example, the streaming content from Netflix can be downloaded and saved on the television’s SD card or equivalent internal storage.

51. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), integrated with the Netflix Television Application, performs a step of transferring user service information, including user account information for one or more account based digital content streaming services, from the kiosk to the flash memory media device. For example, Netflix stores user credentials information such as username and password on the user device memory. This memory can be the internal or external memory of the device.

52. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), integrated with the Netflix Television Application, performs a step wherein, responsive to the flash memory media device being connected to the playback device: if the playback device is connected to a network via a network connection having a speed that meets a threshold for

streaming digital content, the transferred user service information from the connected flash memory media device is used to access at least one of the one or more account based digital streaming services to stream a higher quality version of the content to the connected playback device for playback, wherein the higher quality version of the content is a high definition version of standard definition content transferred from the kiosk to the flash memory media device. For example, Contents can be downloaded from Netflix and stored in SD cards or equivalent internal storage and can be viewed later, even in the absence of a network (internet). Netflix accesses stored user information such as username and password to streamline online content at an HD quality when the device is connected to the internet and has an internet connection speed of 3Mbps (e.g., threshold) and above:

To get the best video quality when watching TV shows, movies, or live events on Netflix, we recommend having a stable internet connection speed (as shown in the table below).

| Video quality | Resolution | Recommended speed |
|---|---|---|
| High definition (HD) | 720p | 3 Mbps or higher |
| Full high definition (FHD) | 1080p | 5 Mbps or higher |
| Ultra high definition (UHD) | 4K | 15 Mbps or higher |

[8]

53. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), integrated with the Netflix Television Application, performs a step wherein, responsive to the flash memory media device being connected to the playback device: otherwise, the content stored on the connected flash memory media device is used for playback of the content. For example, Netflix allows the user to watch movies downloaded on the device SD memory card or equivalent internal storage when there is no internet connection:

[8] *See* https://help.netflix.com/en/node/306.

## How to download titles to watch offline

You can watch TV shows and movies offline at any time by downloading them from the Netflix app. Learn more about finding, downloading, and watching downloaded TV shows and movies below.

To download TV shows or movies you'll need one of these devices with the latest version of the Netflix app installed:

- Android phone or tablet
- iPhone or iPad
- Amazon Fire tablet
- Google Chromebook (with Google Play Store installed)

> **NOTE:** Some older operating system versions for these devices may not support downloads. Make sure your device has the latest updates installed.

**Find a TV show or movie**

Find a TV show or movie and look for the **Downloads** icon, or filter by what is available for download.

> **NOTE:** Not all TV shows and movies are available for download. To learn why, go to this article with more information.

**Download a TV show or movie**

1. Open the Netflix app.
2. Browse all TV shows and movies available for download:
   - iPhone, iPad, Android, or Fire devices: Tap **Downloads** > **See What You Can Download**
   - Chromebook: Click **Downloads** > **Find More to Download**
3. Select a TV show or movie you want to download onto your device.
   - For movies, select **Download**.
   - For TV shows, select the download button next to an episode or tap the **Download Season** to download all episodes of a season.

To save on data usage, we recommend being connected to Wi-Fi while downloading.

Ad-free plans can have up to 100 active downloads at a time per device based on the number of devices included in your Netflix plan.

Ad-supported plans are limited to 15 total downloads per device per calendar month.

If you cancel your account, downloads on your device will be deleted. If you restart your membership, you'll need to download them again.

**Watch downloaded TV shows and movies**

To access and watch the downloads offline, follow the steps below.

1. Open the Netflix app.
2. Tap **Downloads**.
3. Find the download you want to watch, then select **Play**.

> **NOTE:** You need to stay signed in to your Netflix account to access the downloads offline. If you're using a Kids profile, downloaded TV shows and movies with higher maturity ratings may not be available to watch offline.

[9]

54. On information and belief, Defendants' direct infringement of the '803 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

55. Defendants have and continue to indirectly infringe one or more claims of the '803

[9] *See* https://help.netflix.com/en/node/54816.

Patent by knowingly and intentionally inducing others, including Hisense's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

56. Defendants, with knowledge that these products, or the use thereof, infringe the '803 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '803 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '803 Patent at least as early as the issuance of the '803 Patent.

57. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '803 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Hisense makes available to their customers and end-users various materials that instruct them on how to use Hisense products in an infringing manner based on the product, such as user manuals, both on their website and included with the physical products when purchased.



[10]

58. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '803 Patent. Defendants perform these affirmative acts with knowledge of the '803 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '803 Patent.

59. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '803 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '803 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '803 Patent, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '803 Patent. Defendants perform these affirmative acts with knowledge of the '803 Patent and with

[10] https://www.hisense-usa.com/support.

intent, or willful blindness, that they cause the direct infringement of the ’803 Patent.

60. Truesight has suffered damages as a result of Defendants’ direct and indirect infringement of the ’803 Patent in an amount to be proven at trial.

61. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’803 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

## COUNT III
## (Infringement of the ’300 Patent)

62. Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

63. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’300 Patent.

64. Defendants have and continue to directly infringe the ’300 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’300 Patent. Such products include smart televisions, including, but not limited to, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), among other Hisense products.

65. For example, Defendants have and continue to directly infringe at least Claim 1 of the ’300 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smart televisions, including, but not limited to, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), which includes the YouTube Television Application[11], among other Hisense products.

---

[11] *See* https://tv.google/intl/en_in/.

66. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the YouTube Television Application, performs a method for navigating a plurality of chapters of video content within a video. YouTube openly promotes its chapter navigation functionality and offers advice to users on how to incorporate said functionality in their videos. YouTube also added the chapter navigation functionality to its Television, which comes pre-downloaded on most Android devices.

67. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the YouTube Television Application, performs a method of reading from a metadata file stored with the video chapter start times, and location on a secure digital card (SD card) of chapter preview images that correspond to the playable content as initially configured and stored on the secure digital card, each chapter comprising a segment of content of the video. For example, when a user selects to watch certain YouTube videos on the Android app, users will have access to a chapter navigation functionality. The entirety of the YouTube video will be broken up into several chapters, each with a title and a preview image. The chapters will be displayed on the video timeline, in a list format, and in sequence with preview images of each chapter and the time corresponding to each chapter:


3:32
0:20 / 14:12 · Sunrise ›
NIC ANSUINI
NASA
Description
4.5K
Likes
118,919
Views
Dec 16
2022
Ship 24 tested its flaps, Booster 9 rolled out to the launch site for cryo testing with an all new design, and the Ship QD arm was retracted and extended back in place.
Ship 24 Static Fire - https://youtu.be/bRmhHsAhrSQ
Video and Pictures from Nic (@nicansuini), Nor ...more
Chapters
VIEW ALL
Sunrise
0:00
Ship 24 Flap Test
0:30
The Same Test From a Different Angle
1:04
Ship QD Arr Moven
1:41



[12]

68. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the YouTube Television Application, performs a method of presenting, during continuous playback of a video, an on-screen display to a user, the on-screen display including a timeline having a demarcation for the beginning of each of the plurality of chapters of the video and having a marker corresponding to a current position in the video playback, the timeline assembled from the chapter titles, the chapter start times, and the location on the secure digital card of chapter preview images that correspond to the playable content stored as part of the metadata, and the on-screen display including one image for each of the plurality of chapters from

[12] *See* https://www.youtube.com/watch?v=Sri2Y2sToPY, viewed on an Android device.

the chapter preview images displayed in sequential order parallel to the timeline, wherein a focus identifier marks an image of a chapter corresponding to the current position within the continuous video playback. For example, during continuous playback of a video on the YouTube Television Application, a user can access several on-screen displays of the video's timeline. A first timeline is displayed as a red-and-gray bar at the bottom of the video, which displays the timeline of the entire video in sections. The red portions of the bar designate portions of the video that have already played, while the gray sections indicate sections of the video that have yet to play but have buffered. At least two other timelines are viewable in the video's description. A second timeline has a preview image for each chapter, along with the chapter's start time and its name. When the video is playing a particular chapter, the section of this timeline with the corresponding chapter preview image will be highlighted in a light-gray color. The focus identifier (e.g., a small, red dot on the video bar) is located in the corresponding chapter currently playing while the preview image in the video's description is highlighted. A third timeline – also available in the video's description – is a vertical list of the chapters' start times and names.

69. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the YouTube Television Application, performs a method of receiving a selection of one of the chapter preview images as chapter skip input during the continuous playback of the video. For example, during continuous playback of a video on YouTube's Television, a user can skip forward or backward in the video by selecting a chapter in one of the video timelines that has corresponding chapter preview images (e.g., skipping from Chapter "Sunrise" to Chapter "The Same Test From A Different Angle", as shown below):



[13]

70. On information and belief, the YouTube Television Application operates in the same manner across all Google/Android devices. For example, native Google/Android applications and functionalities part of Android Google Services operate in the same manner across the Android ecosystem. *See* https://www.android.com/gms/.

71. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the YouTube Television Application, performs a method of moving the at least one image from each chapter one position along the line with respect to the focus identifier, according to the chapter skip input, wherein the one image is moved to the left when the chapter

[13] *See* https://www.youtube.com/watch?v=Sri2Y2sToPY, viewed on an Android device.

skip input indicates a skip forward and wherein the one image is moved to the right when the chapter skip input indicates a skip backward. For example, a user on the YouTube Television Application can select to skip forward or backward in a video by clicking on one of the preview images in the chapter timeline, where the preview image corresponds to the chapter to which the user is skipping. If the user clicks on an image to the right of the chapter currently playing on the chapter timeline, the video skips forward. Alternatively, if the user clicks on an image to the left of the image of the chapter currently playing on the chapter timeline, the video skips backwards. The focus identifier (e.g., the red dot on the video playback in the figure above) moves accordingly. In response to skipping forward in the video, the selected video chapter preview image is oriented in the center of the chapter timeline and is highlighted in a light-gray color:





[14]

72. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), through the YouTube Television Application, performs a method of skipping playback of the video to a chapter identified by the focus identifier such that the video playback continues from the position of the chapter identified by the focus identifier. For example, a user using the YouTube Television Application can also skip chapters by moving the focus identifier (e.g., the red dot on the video playback) to the right or to the left (e.g., forward or backward in the video, respectively). The focus identifier's position corresponds to the chapter currently playing in the

[14] *See* https://www.youtube.com/watch?v=Sri2Y2sToPY, viewed on an Android device.

video.

73. On information and belief, Defendants' direct infringement of the '300 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

74. Defendants have and continue to indirectly infringe one or more claims of the '300 Patent by knowingly and intentionally inducing others, including Hisense's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

75. Defendants, with knowledge that these products, or the use thereof, infringe the '300 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '300 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '300 Patent at least as early as the issuance of the '300 Patent.

76. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '300 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers

and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Hisense makes available to their customers and end-users various materials that instruct them on how to use Hisense products in an infringing manner based on the product, such as user manuals, both on their website and included with the physical products when purchased.



[15]

77. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '300 Patent. Defendants perform these affirmative acts with knowledge of the '300 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '300 Patent.

78. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '300 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District

[15] https://www.hisense-usa.com/support.

and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '300 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '300 Patent, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '300 Patent. Defendants perform these affirmative acts with knowledge of the '300 Patent and with intent, or willful blindness, that they cause the direct infringement of the '300 Patent.

79. Truesight has suffered damages as a result of Defendants' direct and indirect infringement of the '300 Patent in an amount to be proven at trial.

80. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '300 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

**COUNT IV**
**(Infringement of the '749 Patent)**

81. Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

82. Truesight has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '749 Patent.

83. Defendants have and continue to directly infringe the '749 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '749 Patent. Such products include smart televisions, including, but not limited to, the Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), among other Hisense products.

84. For example, Defendants have and continue to directly infringe at least Claim 1 of

the ’749 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smart televisions, including, but not limited to, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), among other Hisense products. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) is exemplary of how the Accused Products infringe the ’749 Patent.

85. On information and belief, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), along with other Hisense smart televisions, is equipped with an eMMC and/or a UFS memory module, which performs a method for generating a virtual secure digital (SD card).

86. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), equipped with an eMMC and/or a UFS memory module, performs a step of reading a media key block and media identification for an SD card. For example, during configuration of secure storage, media keys and media identification are loaded and read. By way of further example, when a video is loaded into memory on a Hisense device, a Digital Rights Management (“DRM”) module loads and reads media keys as well as media identification and metadata related to DRM.

87. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), equipped with a an eMMC and/or a UFS memory module, performs a step of storing the media key block and the media identification. For example, prior to playback, the Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) stores media key blocks and media identification. This information can be stored on an eMMC and/or a UFS memory module.

88. The Hisense – 55” Class U7 Series MiniLED QLED UHD 4K HDR Smart Google

TV (2026), equipped with a an eMMC and/or a UFS memory module, performs a step of creating a file system for secure data on a storage device for storage of secure data corresponding to a secure data area of the SD card. For example, the Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) creates file systems for secure storage (e.g., a "Secure File System") on a storage device (e.g., on eMMC and/or UFS memory). This file system (e.g., a portion of the RPMB partition) corresponds to the secure area of an SD card.

89. The Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026), equipped with an eMMC and/or a UFS memory module, performs a step of creating a file system for user data on the storage device for storage of user data corresponding to a user data area of the SD card, wherein a size of the file system for secure data is determinant on a size of the file system for user data, the determination based on a lookup table providing a relationship between the sizes. For example, the Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) creates file systems for user data (e.g. the media itself such as encrypted DRM protected media). This information is stored along with user data on the storage of the eMMC / UFS storage. By way of further example, the Android Trusty TEE Secure File system utilized by Hisense – 55" Class U7 Series MiniLED QLED UHD 4K HDR Smart Google TV (2026) includes the capability to create superblocks, which can dynamically grow the size of the secure file system based on the size of the unsecured user content.

90. On information and belief, Defendants' direct infringement of the '749 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products.

91. Defendants have and continue to indirectly infringe one or more claims of the '749

Patent by knowingly and intentionally inducing others, including Hisense's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

92. Defendants, with knowledge that these products, or the use thereof, infringe the '749 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '749 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, with the subject belief that there was a high probability that Defendants would learn of their infringing activities, thereby remaining willfully blind to the '749 Patent at least as early as the issuance of the '749 Patent.

93. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '749 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications. For example, Hisense makes available to their customers and end-users various materials that instruct them on how to use Hisense products in an infringing manner based on the product, such as user manuals, both on their website and included with the physical products when purchased.



[16]

94. On information and belief, these instructional materials are prepared by Defendants or at the direction of Defendants. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '749 Patent. Defendants perform these affirmative acts with knowledge of the '749 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '749 Patent.

95. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '749 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '749 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '749 Patent, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the '749 Patent. Defendants perform these affirmative acts with knowledge of the '749 Patent and with

[16] https://www.hisense-usa.com/support.

intent, or willful blindness, that they cause the direct infringement of the ’749 Patent.

96. Truesight has suffered damages as a result of Defendants’ direct and indirect infringement of the ’749 Patent in an amount to be proven at trial.

97. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’749 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Truesight prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate Plaintiff for Defendants’ infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Vincent J. Rubino, III*

Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 817-1840
Facsimile: (973) 535-0921

***ATTORNEYS FOR PLAINTIFF,***
***TRUESIGHT COMMUNICATIONS LLC***